IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL ACTION<br>No. 19-64 |
| JOHN DOUGHERTY *et al.*, | |

## MEMORANDUM

**SCHMEHL, J.** /s/ JLS                                                                         November 2, 2020

      Presently before the Court are defendants' motions to sever the case, and the government's opposition thereto. Some defendants request that the 116-count indictment be severed into two parts, between counts 1-96 and 97-116, which will require two trials. Defendant Crawford requests a three-part severance, between counts 1-87, 88-96 and 97-116, which would require three trials.

      Defendants' motions present two questions: (1) whether the defendants were properly joined in a single indictment under Federal Rule of Criminal Procedure 8(b), and (2) whether a joint trial of all defendants would unduly prejudice the defendants under Federal Rule of Criminal Procedure 14(a). The Court addresses the second question.

      For the reasons set out below, the Court finds that a single trial of all defendants would unduly prejudice defendant Henon as it pertains to counts 1-96, and conversely, a single trial would unduly prejudice the defendants not named in counts 97-116. Additionally, requiring a single jury to compartmentalize all the evidence and counts in a single trial is unfeasible.

Accordingly, the Court severs the indictment into two cases, between counts 1-96 and 97-116, and the case will proceed forward in two trials.

**<u>Relevant Factual Background</u>**

A grand jury issued a 116-count indictment as to the above seven defendants. The indictment alleges multiple conspiracies with defendant John Dougherty, the Business Manager of a local union, Local 98, at the helm of each conspiracy. The parties state, and it can be understood from the indictment, that there are three alleged conspiracies.

The first conspiracy is alleged through counts 1-87, and can be referred to as the "embezzlement counts." The second conspiracy is alleged through counts 88-96, and can be referred to as the "labor bribery counts." The third conspiracy is alleged through counts 97-116, and can be referred to as the "corruption counts."

For counts 1-87, the embezzlement counts, the government will present evidence that defendants Dougherty, Burrows, Neill, Crawford, Rodriguez, and Fiocca, all used Local 98's funds as their personal spending accounts. The government alleges that Dougherty used Local 98 credit cards for routine daily expenses, and provided cards to other union members who used them in a similar vein. Additionally, Dougherty had personal construction work performed on his home, his business, and at the homes of family members on behalf of and paid for by Local 98. Dougherty also made fraudulent reimbursements for personal expenses, paid acquittances for no-show jobs, and more. (ECF No. 1 at 13-19.)

For counts 88-96, the labor bribery counts, the government will present evidence that Dougherty used his position to influence others, such as defendant Henon, which intentionally benefitted MJK Electric. In return, Dougherty received free services from MJK Electric such as

improvements on his home and his business, kickbacks in the form of gift cards and merchandise, and other personal monetary gains. (*Id.* at 93-98.)

Lastly, for counts 97-116, the corruption counts, the government will present evidence of a *quid pro quo* agreement between defendants Dougherty and Henon. The *quid* is that Dougherty provided Henon with a stream of benefits including sporting tickets exceeding $10,000 and a salary of about $70,000 at Local 98 despite the fact that Henon did not perform any official work. The *quo* in return is that Henon used his position as a Philadelphia City Councilman to personally benefit of Dougherty in his affairs. Specifically, Henon halted the installation of MRI equipment at the Children's Hospital of Pennsylvania at Dougherty's direction, influenced dealings with Comcast to benefit MJK Electric, opposed an audit of the Philadelphia Parking Authority at Dougherty's direction, and more. (*Id.* at 109-10.)

Presently, defendants Burrows, Henon, Neill, and Rodriquez motion the Court to sever the indictment into two, between counts 1-96, which are against all defendants except Henon, and counts 97-116, which are against Dougherty and Henon. Defendant Crawford is the only defendant to motion the Court to sever the indictment into three parts, between counts 1-87, 88-96, and 97-116.[1]

**Discussion**

---

[1] Crawford argues that the indictment should be severed into three parts because the three conspiracies are "unrelated," "share no common defendants, witnesses, or evidence," and they are "not connected to each other in any logical way." (ECF No. 70 at 13.) Of course, every one of the conspiracies has a common defendant because Dougherty is named throughout. There is common evidence because of Dougherty's position at Local 98, and the use of Local 98's funds are the alleged centerpieces of the conspiracies. It logically follows that common witnesses will be used to prove each conspiracy. But more importantly to severance, Crawford's motion does not implicate the same issues of prejudice and jury compartmentalization. The extra severance that Crawford requests, counts 88-96, involves Dougherty's dealings with MJK Electric where Dougherty would send MJK Electric work and receive kickbacks. These allegations are on par with the allegations set out in counts 1-87. The Court finds the additional severance unnecessary because a jury can appropriately compartmentalize the embezzlement of Local 98's funds alleged in counts 1-87, and Dougherty's dealings with MJK Electric alleged in counts 88-96 in one trial. Therefore, Crawford's motion is denied.

Federal Rule of Criminal Procedure 14 subsection (a) provides: "If the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed.R.Crim.P. 14(a).

Rule 14(a) permits district courts to grant severance "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). The Court stated that severance of joint trials is likely appropriate where there is a high risk of 'guilty by association,' where a case is complex and the defendants have "markedly different degrees of culpability," or when evidence is probative against one defendant but technically only admissible against a defendant for being a codefendant. *Id.*

The Third Circuit instructed that defendants bear a heavy burden and must point to "clear and substantial prejudice resulting in an unfair trial." *United States v. Walker*, 657 F.3 160, 170 (3d Cir. 2011) (citations omitted). The inquiry is "whether the jury will be able to compartmentalize the evidence as it relates to separate defendants in view of its volume and limited admissibility." *United States v. Lore*, 430 F.3d 190, 205 (3d Cir. 2005) (citations omitted).

Here, the risk of prejudice had the entire case went forward in one trial is extremely high, and a single jury's ability to compartmentalize all the evidence against each defendant for each count is unfeasible. Counts 1-96 are against all defendants except for Henon, and generally allege the embezzlement of Local 98's funds. Whereas counts 97-116, which are against defendants Dougherty and Henon alone, allege public corruption activities based upon Dougherty's position with Local 98, and Henon's position as a Philadelphia City Councilman.

4

The risk of 'guilty by association,' and the defendants' different degrees of culpability shows that the prejudice against Henon for counts 1-96 and the prejudice against the defendants not named in counts 97-116 is so high that defendants would likely not receive a fair trial.

The sheer volume and nature of the evidence presents a glaring high risk of prejudice. The Court is aware of substantial evidence that the government plans to present, and more evidence will likely be produced before trial. For counts 1-96, the government will present evidence that defendants embezzled Local 98's funds by using credit cards for personal expenses, had construction work performed at their homes and businesses for free, made payments to non-employees for no-show work, intentionally overpaid certain persons, and more. For counts 97-116, the government will present further evidence that Dougherty and Henon conspired to defraud the City of Philadelphia. The government will show that Henon reaped in benefits from Local 98 such as a salary exceeding $70,000 and sporting tickets exceeding $10,000, however, Henon did not provide any official work for Local 98. Instead, Henon received these benefits to aid Dougherty in his affairs. For example, Henon allegedly halted the installation of MRI equipment at the Children's Hospital of Pennsylvania so that Dougherty's union members could get the job, he influenced Comcast to hire the preferred electrical contractor of Dougherty, he opposed an audit of the Philadelphia Parking Authority to protect some of Dougherty's acquittances, and more. The Court is very concerned that this evidence would prejudice the other defendants if this case proceeded in a single trial.

While the counts are related in that Dougherty is alleged to be at the helm of each conspiracy and Local 98's funds are used throughout, this alone clearly does not support the case proceeding in one trial. The defendants listed in counts 1-96 are not alleged to have known of or

participated in Dougherty's and Henon's corruption conspiracy. Likewise, Henon is not alleged to have known of or participated in the embezzlement activities alleged in counts 1-96.

Not only would a single trial of all defendants present substantial prejudice, but requiring a single jury to compartmentalize the evidence against all seven defendants based upon 116 counts is unfeasible. Before this severance, the trial was scheduled to take place over six to eight weeks. The government has already produced at least 32 terabytes of evidence. A single jury would simply be unable to untangle and compartmentalize the volume of the evidence while considering 116-counts. Although jury instructions are capable and presumed to remedy such situations, jury instructions are not well-suited under these circumstances. Such instructions would require the jury to ignore weeks' worth of evidence against some defendants while simultaneously using that evidence against other defendants in coming to multiple verdicts. Furthermore, not only will the amount of evidence be very difficult for a jury to compartmentalize, but the nature of the evidence and the complexities of the embezzlement and corruption counts will compound that difficulty.

The case law the parties highlight clearly supports severance. In *Lore*, multiple defendants were charged for embezzling union funds, and one defendant was separately charged for making false statements to obtain disability benefits. *United States v. Lore*, 430 F.3d 190, 196-97, 204-05 (3d Cir. 2005). The Third Circuit affirmed the court's denial of severance because the false statement charge was "relatively straightforward and discrete, not involving overly technical or scientific issues," and a jury could have reasonably "been expected to compartmentalize the evidence." *Id.* at 205. Similarly, in *Walker*, two defendants were charged with eight total counts, six were against both defendants for drug and firearm offenses, and two were against one defendant for escaping custody and a drug charge on his re-arrest. *United States*

*v. Walker*, 657 F.3d 160, 164-65, 168 (3d Cir. 2011). The Third Circuit affirmed the court's denial of severance because there were only two defendants, it was a four-day trial that pertained to just three distinct episodes of criminal conduct, and the jury instructions were viewed as properly remedying any prejudice. *Id.* at 170-71; *see also United States v. Reyeros*, 537 F.3d 270, 286-87 (3d Cir. 2008).

Here, this case involves complex charges, seven defendants, and a single trial would be expected to occur over six to eight weeks. Additionally, the culpability for each defendant varies, and the alleged criminal conduct spans years. Unlike a case involving two defendants on drug charges where jury instructions may remedy any prejudice or confusion, the prejudice and confusion in this case would be unavoidable, and a single jury would be unable to compartmentalize all of the counts and evidence.

The Court is guided by the severance granted in *United States v. Bryant*, 556 F.Supp.2d 378 (D.N.J. 2008). In *Bryant*, two defendants, Wayne Bryant and Michael Gallagher, were charged with an array of crimes concerning corruption, and misappropriation of funds. *Id.* at 382-83. There were twenty counts in total, one of which, count seven, was dismissed. *Id.* at 383. At the time, Bryant was a New Jersey State Senator, and Gallagher was the Dean of the School of Osteopathic Medicine within the University of Medicine and Dentistry of New Jersey. *Id.* Counts 1-14 charged the defendants with a *quid pro quo* where Bryant helped Gallagher become the Dean, Gallagher then put Bryant on the school's payroll, and Bryant used those funds to increase his pensionable income. *Id.* at 384-86, 429-33. Counts 15-20 charged Gallagher for fraudulently paying himself bonuses based upon his positions of Dean and Chairperson to one of the school's departments. *Id.* at 438. The court severed counts 1-14 from 15-20 for two reasons. First, since Bryant lacked knowledge and involvement in Gallagher's scheme of paying himself

7

bonuses, the court found a clear risk that prejudicial evidence would "unfairly spill over into the Government's case," and the jury would be unable to compartmentalize the differing evidence. *Id.* at 465-66. Second, Gallagher had a constitutional argument against the bonuses that compounded the potential prejudice. *Id.*

The *Bryant* court's reasoning concerning evidence spilling over and the jury's ability to compartmentalize the evidence is applicable to this case. Evidence that the defendants routinely used Local 98's funds as their personal bank accounts would substantially prejudice Henon, and conversely, evidence that Dougherty and Henon conspired to defraud the City of Philadelphia would substantially prejudice the other defendants. Similarly and as already stated, a single jury would be unable to properly compartmentalize the nature and quantity of the evidence against all seven defendants over a six to eight week 116-count trial.

## **Conclusion**

For all of the above reasons, the Court finds that the likelihood of having a fair trial is substantially diminished if all counts of the indictment were tried in a single trial, therefore, defendants' motions to sever the indictment between counts 1-96 and counts 97-116 are GRANTED. Counts 1-96 will proceed in a single trial against Dougherty, Burrows, Neill, Crawford, Rodriguez, and Fiocca, and counts 97-116 will proceed in a separate trial against Dougherty and Henon. An appropriate Order follows.